## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ADAM SILVA, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> ST. ANNE CATHOLIC SCHOOL, <br> Wichita, Kansas, et al., <br><br> Defendants. | Case No. 08-1143-JTM |

### MEMORANDUM AND ORDER

This action arises out of an English-only policy implemented at St. Anne's Catholic School (St. Anne's) near the beginning of the 2007-2008 school year. At the time the policy was implemented, the three minor plaintiffs, Adam Silva, Dalia Fernandez, and Cesar Cruz, were students at the school. After the policy became effective, the three minor plaintiffs and their parents brought suit, alleging discrimination based on race, color, or national origin because of the English-only rule. Summary judgment was granted in part and denied in part by the court in August, and the case proceeded to a bench trial, which began on August 12, 2008. The trial concluded on August 15, 2008, and the court announced its ruling in detail, in favor of the defendants, at the conclusion of the evidence. This order serves to memorialize the findings of the court.

## I. Findings of Fact

Factual findings of this court are set out in detail in the order regarding summary judgment. Those findings are incorporated by reference, and summarized briefly below.

1. St. Anne's is a private Catholic elementary and middle school in Wichita, Kansas, operated by the Catholic Diocese of Wichita.

2. The admission and continued enrollment of a student at St. Anne's is voluntary; the school and the diocese reserve the right to admit or deny admission or continued enrollment to any student at any time.

3. The principal or pastor of St. Anne's is the final authority on all matters related to discipline. The school handbook provides, in part:

    > The principal (and/or) pastor is the final recourse in all disciplinary situations and may waive any and all regulations for just cause at his or her discretion. When rules aren't followed consequences will be given depending upon the nature of the offense.

4. All plaintiff families acknowledged that statement and agreed to be governed by the handbook when they enrolled their children at the school.

5. St. Anne's receives federal funds through the National School Lunch Program (NSLP) administered by the United States Department of Agriculture (USDA). Under the program, the government gave St. Anne's $2.47 in cash for every free lunch, $2.07 for every reduced price lunch, and $0.23 for every paid lunch the school served during the 2007-2008 school year.

6. The three minor student plaintiffs, Adam Silva, Dalia Fernandez, and Cesar Cruz, speak English and Spanish; English is their primary or "first" language. Further, plaintiffs in this case are all Hispanic, as that term is generally understood.

7. Early in the school year, several of the St. Anne's staff expressed several behavioral concerns, which they attributed to certain Hispanic students individually and as a group.

8. Several incidents involving the treatment of the Hispanic children were described in detail during the trial. Notably, the children were told not to sit together during lunch. Later, that plan was allegedly revoked, but then confusion ensued when the revocation was deemed a mistake. The Hispanic boys were not told of the mistake prior to the time that Adam Silva was moved from one place to a table by himself during lunch.

9. Additionally, the Hispanic children were told to mingle with other students on the playground.

10. St. Anne's formally implemented an English-only rule near the beginning of the 2007-2008 school year. Prior to September 2007, there was no written English-only policy at St. Anne's. The policy essentially required that students were to speak only English at all times during the school day, including during lunch and fresh air time.

11. After the implementation of the rule, several steps were taken by the school and the parents, as detailed in the summary judgment order.

12. Notably, the St. Anne's students were asked to acknowledge in writing that they had been told of the policy. Further, St. Anne's sent a written policy statement home with the students for the parents to read and acknowledge.

13. When asked to sign an acknowledgment of the English-only rule, Adam Silva refused.

14. On October 12, 2007, Adam Silva and his parents had a meeting with Sister Margaret.

15. Sister Margaret contends that she asked the Silvas to transfer Adam to St. Elizabeth Ann Seton Catholic School due to parental defiance of the principal's authority; the Silvas argue that Adam was expelled. Despite the differing accounts of the events of that day, it is clear that Adam Silva was told to leave St. Anne's, and St. Anne's was helpful in arranging for his transfer to another Catholic School.

16. The inference from the testimony was clear that the Hispanic children were watched more closely than the Caucasian students. This inference is supported by the notes that were admitted into evidence, as well as the testimony of the teachers and staff.

17. Plaintiffs brought suit alleging that St. Anne's violated Title VI of the Civil Rights Act and 42 U.S.C. § 1981 by intentionally discriminating against the sixth-graders based on race, color, or national origin causing a hostile educational environment.

18. After review of the summary judgment motions, the Court entered an order limiting plaintiffs' claims to Counts III and IV of Plaintiffs Second Amended Complaint. Count III alleges that the Diocese created and tolerated a hostile educational environment at St. Anne Catholic School in violation of 42 U.S.C. § 1981. Count IV alleges that the Diocese created and tolerated a hostile educational environment at the school in violation of 42 U.S.C. § 2000d.

19. The Court also ruled that the only proper parties were the three student plaintiffs and the Diocese, and that Sister Margaret could only be sued in her official capacity.

20. Plaintiffs claim a hostile educational environment existed due to both peer-to-peer race discrimination, as well as intentional race discrimination by Sister Margaret.

21. Plaintiffs claim that the English-only policy caused other students to taunt the minor plaintiffs. Plaintiffs identify two incidents where another middle school student made a statement or did something they considered inappropriate. One related to an email reflecting hostility toward the Hispanic community by referencing the United States as "our country, not yours." Sister Margaret met with the student and the student's mother to discuss the offensive nature of the email. The student who sent the email was counseled on the inappropriate nature of the email, and was told not to do anything like that again.

22. The other incident involved a student telling Dalia Fernandez not to touch or fold an American flag after Dalia Fernandez folded a flag and mistakenly forgot to put the stars on the outside. A student told Dalia Fernandez that she had done it

wrong and that "we weren't in Mexico." The teacher talked to the student about the comment, corrected the student for his inappropriate comment, and handled the event as a teaching opportunity. Dalia Fernandez reported that she felt that it was appropriate for her teacher to talk to the boy who had made the comment.

## II.  Conclusions of Law

1. A contract does exist between St. Anne's and the families of the children who attend St. Anne's. The families agree to contribute a portion of their earnings to the church, and the church agrees to provide the children with an education.

2. Further, there is language in the handbook and in other school documents, as well as federal statute, that is sufficient to establish that St. Anne's has a commitment not to discriminate on the basis of race, ethnicity, or national origin.

3. Because a contract exists, § 1981 is applicable to the facts of this case.

4. To succeed on a hostile educational environment claim, plaintiffs must prove both that the child was subjected to a racially hostile environment, and that the school district was deliberately indifferent to the racial harassment. *See Davis v. Monroe Co., Bd. of Educ.*, 526 U.S. 629, 650 (1999).

5. In peer-to-peer harassment cases, only deliberate indifference to such harassment can be viewed as discrimination by school officials themselves. *See Bryant v. Indep. Sch. Dist. No. I-38*, 334 F.3d 928, 932-34 (10th Cir. 2003).

6. Deliberate indifference can be found only when the defendant's response to known discrimination is "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

7. On its face, the policy itself does not create a hostile educational environment because it is neutral in its wording.

8. As such, the remaining question is whether the policy creates a hostile education environment in its operation and effect.

9. To create a hostile environment in its operation and effect, the consequential conduct must be so severe or, if lacking in severity, so pervasive or a combination of the two that it makes it impossible for the affected student to learn. *See Davis*, 526 U.S. at 650.

10. To be pervasive, the instances of harassment must be "more than episodic; they must be sufficiently continuous and concerted." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)(quoting *Carrero v. N.Y. Hous. Auth.*, 890 F.2d 569, 277 (2d Cir. 1989)).

11. Plaintiffs cannot prove that the alleged harassment was pervasive. There is no single incident that is so severe as to create a hostile environment. Further, the events that were testified about did not occur over a long enough time, and were not severe enough, to create a hostile educational environment.

12. Additionally, St. Anne's was clearly not deliberately indifferent to the incidents of peer-to-peer harassment. Instead, St. Anne's acted quickly to any and all incidents that it knew about regarding inappropriate comments among peers.

13. Because there was not a hostile educational environment, the school need not establish that it had legitimate reasons for implementing the policy.

14. Nevertheless, it appears that the school acted in good faith, and felt it had reasons for implementing the policy. The evidence establishes that the school was responding to incidents which would have required action, regardless of the ethnic group involved.

15. With respect to the monitoring of the students, the Court finds that the Hispanic students were not excessively monitored in an intrusive way that created a hostile environment. Instead, there is a certain amount of monitoring that is necessary in any school in order to ensure that students are complying with the school's directives.

16. It is not this Court's place to pass on the wisdom or soundness of the policy. Nevertheless, the Court feels it is appropriate to note that things could have been handled differently by all the parties involved.

17. In sum, the request for injunctive relief is denied with respect to St. Anne's English only policy because it is objective neutral. Further, the policy did not and does not create a hostile educational environment. No incident or combination of incidents was severe enough to create a hostile environment. Accordingly, judgment shall be entered in favor of the defendants.

IT IS ACCORDINGLY ORDERED this 12th day of January, 2009, that judgment shall be entered in favor of the defendants.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE